UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| IN RE RICHARD KEITH NAGBY,<br><br>　　　　　Debtor.<br>_____<br><br>ODYSSEY REINSURANCE COMPANY,<br><br>　　　　　Appellee,<br>　　v.<br><br>RICHARD KEITH NAGBY,<br><br>　　　　　Appellant. | Case No. 2:23-cv-00688-MMD<br><br>Bankruptcy Case No. 19-15199-mkn<br><br>Adversary No. 19-01111<br><br>ORDER |

**I.　SUMMARY**

This bankruptcy appeal is before the Court for review on its merits.[1] Nagby appeals from the Bankruptcy Court's Order[2] granting Odyssey's motion for partial summary judgment and denying Nagby a discharge from bankruptcy. As further explained below, the Court reverses and vacates the Bankruptcy Court's Order and remands for further proceedings consistent with this order because the Court finds the Bankruptcy Court made an adverse credibility determination and overlooked a genuine dispute of material fact in ruling that Nagby knowingly and with fraudulent intent omitted extensive information from his bankruptcy schedules. However, the Court is unpersuaded by Nagby's argument that he only omitted immaterial information from his schedules.

---

[1] Appellant Richard Keith Nagby filed an opening brief (ECF No. 12), Appellee Odyssey Reinsurance Company filed an answering brief (ECF No. 23), and Nagby filed a reply brief (ECF No. 24).

[2] The Honorable United States Bankruptcy Judge Mike K. Nakagawa's order on Plaintiff's motion for summary judgment on Plaintiff's third claim for relief (objecting to discharge) or in the alternative for summary adjudication of issues. (ECF No. 22 at 49-72.)

## II.     BACKGROUND

This appeal arises from an adversary proceeding ("Adversary") related to Nagby's Chapter 7 bankruptcy case. The litigation history between the parties to the Adversary is extensive but basically boils down to a dispute over money that Odyssey contended Nagby owed it. Odyssey won a judgment to that effect against a company that Nagby jointly controlled with his now-ex-wife in the District of Connecticut. (ECF No. 23 at 8; *see also* ECF No. 12 at 15.) The Southern District of California then granted partial summary judgment in Odyssey's favor against Nagby in a fraudulent transfer action. (ECF No. 23 at 8; *see also* ECF No. 12 at 16.) Nagby next filed for Chapter 7 bankruptcy before Odyssey could have the favorable order it won in the Southern District of California reduced to judgment. (ECF No. 23 at 12; *see also* ECF No. 12 at 16.)

When Nagby filed his Chapter 7 petition, he filed his required schedules and statement of financial affairs ("SOFA") along with it. (ECF No. 12 at 16.) He then attended his § 341 meeting of creditors. (*Id.*) In response to that meeting, he filed amended schedules and a SOFA that listed some 15 items he had previously omitted in his initial schedules and SOFA. (*Id.* at 16-18.)

In November 2019, Odyssey filed the Adversary objecting to the potential discharge of Nagby's debts. (*Id.* at 18.) In December 2019, Nagby again amended his schedules (twice), adding more items he had previously omitted. (*Id.* at 18-19.)

Odyssey then moved for partial summary judgment in the Adversary on its claims under 11 U.S.C. § 727(a)(4)(A). (*Id.* at 19-20.) In response to Odyssey's summary judgment motion, Nagby filed a declaration in which he offered explanations for his various omissions and decisions to amend his schedules and SOFA. (*Id.* at 20.) Despite the content of the declaration, the Bankruptcy Court granted Odyssey's motion for summary judgment, denying Nagby a discharge on the basis that he had made numerous 'false oaths.' (*Id.* at 20; *see also* ECF No. 22 at 49-72.) The Bankruptcy Court's Order was eventually reduced to judgment and this appeal followed. (ECF No. 12 at 20; *see also* ECF No. 1.)

### III. LEGAL STANDARDS

A bankruptcy court's conclusions of law are reviewed de novo, "including its interpretation of the Bankruptcy Code," and its factual findings are reviewed for clear error. *In re Rains*, 428 F.3d 893, 900 (9th Cir. 2005); *see also In re Salazar,* 430 F.3d 992, 994 (9th Cir. 2005). "The Bankruptcy Court's grant of summary judgment is reviewed de novo." *In re Hopkins*, 192 B.R. 760, 762 (D. Nev. 1995) (citation omitted). And in reviewing a bankruptcy court's decision, the Court ignores harmless errors. *See In re Mbunda*, 484 B.R. 344, 355 (B.A.P. 9th Cir. 2012).

This appeal centers on 11 U.S.C. § 727(a)(4)(A), which provides that the bankruptcy court must grant the debtor a discharge unless, as pertinent here, the debtor made a false oath. *See In re Retz*, 606 F.3d 1189, 1196 (9th Cir. 2010). "A false statement or an omission in the debtor's bankruptcy schedules or statement of financial affairs can constitute a false oath." *In re Khalil*, 379 B.R. 163, 172 (B.A.P. 9th Cir. 2007), *aff'd*, 578 F.3d 1167 (9th Cir. 2009). To prevail on a § 727(a)(4)(A) claim, a party objecting to discharge—such as Odyssey here—must show, "by a preponderance of the evidence, that: '(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently.'" *In re Retz*, 606 F.3d at 1197 (citation omitted).

This appeal also implicates the summary judgment standard applicable in bankruptcy cases, and indeed, in all cases in federal court. In resolving a summary judgment motion, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). "Moreover, in considering the issue on summary judgment, the bankruptcy court was obliged to refrain from weighing the evidence or making credibility determinations." *In re Plise*, 719 F. App'x 622, 624 (9th Cir. 2018) (citing *Anderson*, 477 U.S. at 255).

///

///

## IV. DISCUSSION

Nagby raises essentially two arguments in his appeal that he characterizes as three. Nagby first argues the Bankruptcy Court erred by concluding that omissions and misstatements that Nagby made in his bankruptcy schedules were material (ECF No. 12 at 23-37), and then argues that the Bankruptcy Court erred by granting Odyssey summary judgment that he knowingly and fraudulently made false oaths to the Bankruptcy Court (*id.* at 37-46). As further explained below, the Court agrees with Bankruptcy Court—and disagrees with Nagby—that Nagby's omissions and misstatements were material, but agrees with Nagby that the Bankruptcy Court erred in granting Odyssey summary judgment on the disputed factual issues going to Nagby's knowledge and intent. The Court first addresses materiality below, and then intent.

### A. Materiality

There is no dispute in this case that Nagby initially omitted the existence of various LLCs and trusts he had set up for his benefit at various times, along with a variety of assets, but later amended his schedules to include most of them. (*Compare* ECF No. 12 at 16-19 (detailing all the things he omitted but stating he amended his schedules once various proceedings in the bankruptcy case prompted him to decide he should include them) *with* ECF No. 22 at 68 n.17 (noting that Nagby's schedules remain incorrect).) Nagby instead argues that his omissions were immaterial under 11 U.S.C. § 727(a)(4)(A) because they involved Nagby's interests in LLCs and trusts that held no assets at the time he filed for bankruptcy and otherwise did not involve large amounts of money. (ECF No. 12 at 23-37.) Odyssey counters that Nagby's omissions and misstatements were material under the widely adopted legal definition of materiality in this context. (ECF No. 23 at 27-32.) The Court agrees with Odyssey.

"A fact is material 'if it bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property.'" *In re Retz*, 606 F.3d at 1198 (citation omitted). "An omission or misstatement that 'detrimentally affects administration of the estate' is

material." *Id.* (citation omitted). Materiality is broadly defined. *See In re Taylor*, 720 F. App'x 413, 414 (9th Cir. 2018) (citing *In re Wills*, 243 B.R. 58, 62 (9th Cir. BAP 1999). This is because "[t]he fundamental purpose of § 727(a)(4)(A) is to insure [sic] that the trustee and creditors have accurate information without having to conduct costly investigations." *In re Wills*, 243 B.R. at 63 (citation omitted).

But Nagby instead relies on the statement from *In re Kuchecki*, Case No. ADV.08-01389-TA, 2010 WL 6259966, at *5 (B.A.P. 9th Cir. Nov. 29, 2010) that, "[a] false statement or omission is immaterial if it does not impact a bankruptcy case, such as might occur where the omission or misstatement concerns assets having little or no value, or that would not be property of the estate." (ECF No. 12 at 24.) This is not the correct standard because it does not reflect the fundamental purpose of Section 727(a)(4)(A) described above. Permitting debtors to omit items that they deem immaterial is not ensuring that the trustee and creditors have accurate information without having to conduct costly investigations. *See In re Wills*, 243 B.R. at 63. Indeed, the sort of standard Nagby proposes would encourage debtors to omit assets and interests they deem immaterial, which would necessarily require the trustee and creditors to conduct investigations to verify whether they agree with the debtor's assessment of what was and was not material.

Particularly using a broad definition of materiality, *see In re Taylor*, 720 F. App'x at 414, there can be no dispute that failing to disclose the existence of several LLCs and trusts apparently set up to protect assets from an ex-wife and creditors bears a relationship to Nagby's business transactions and estate, *see In re Retz*, 606 F.3d at 1198. Similarly, failing to disclose the existence of several trusts and LLCs certainly bears a relationship to the existence of Nagby's property. *See id.* Indeed, he does not dispute that he failed to initially disclose the existence of several trusts and LLCs set up for his benefit, along with some income and the prepayment of two leases. (ECF No. 12 at 16-19 (listing numerous items initially omitted).) Nagby's materiality argument is entirely unpersuasive.

In sum, the Court rejects Nagby's argument that all of his omissions were immaterial and affirms the Bankruptcy Court's finding that these omissions were. (ECF No. 22 at 67-69.)

### B.    Intent

The parties' arguments as to the knowledge and fraudulent intent elements of Odyssey's Section § 727(a)(4)(A) claim largely depend on the declaration Nagby submitted along with his response to Odyssey's summary judgment motion in the bankruptcy case—which itself creates issues of material fact precluding summary judgment on these two elements. (ECF No. 21 at 17-30 (the "Declaration").) Nagby contradicts himself to some extent in the Declaration, but drawing all inferences in his favor, he may not have acted knowingly and may have lacked fraudulent intent. (*Id.* at 25 ("I did not at any time knowingly or intentionally misstate or omit information that was or should have been disclosed on my Schedules or SOFA.").) The Bankruptcy Court accordingly made an impermissible credibility determination and did not give appropriate weight to the summary judgment standard when it granted Odyssey summary judgment regardless of the full content of the Declaration. (ECF No. 22 at 69-72 (making the pertinent rulings).) For all the reasons the Bankruptcy Court provided in its Order (*see id.*), Odyssey seems likely to prevail at trial, but the Bankruptcy Court erred in resolving the issues of Nagby's knowledge and intent at summary judgment.

Indeed, *In re Plise*, 719 F. App'x 622 presents a closely analogous set of facts. There, the United States Court of Appeals for the Ninth Circuit reversed the district court's affirmance of the bankruptcy court's grant of summary judgment on fraudulent intent where the debtor submitted "a declaration wherein he flatly denied that he possessed any fraudulent intent[.]" *Id.* at 624. The bankruptcy court disregarded these statements in the debtor's declaration and indicated at oral argument she did not believe him. *See id.* But the Ninth Circuit noted, "[w]hile the bankruptcy court is entitled to make such a determination following a bench trial and may be entirely justified in doing so in this case,

1  it was nonetheless improper for the court to do so at the summary judgment stage." *Id.* at
2  625.

3  Nagby included some statements in his Declaration that are similar to the debtor
4  in *In re Plise*, though he also included some other statements—upon which the
5  Bankruptcy Court relied—that certainly suggest he knew what he was doing and had
6  fraudulent intent. Specifically, Nagby describes how it "came to his attention" at his § 341
7  creditors meeting that he "inadvertently omitted" two prepaid automobile leases, the
8  existence of several LLCs and trusts, and transfers of assets before his petition date.
9  (ECF No. 21 at 22.) Nagby says he omitted references in his schedules to the LLCs and
10 trusts because, "I had either forgotten about [them] or did not believe [them] to be
11 irrelevant [sic] as such LLCs and trusts held no assets[.]" (*Id.*) This statement suggests
12 he was aware of the LLCs and trusts but chose to omit them from his schedules. And it
13 is true that 'relevance' is not a legitimate consideration when it comes to what to include
14 in bankruptcy filings. *See, e.g.*, *In re Rolland*, 317 B.R. 402, 413 (Bankr. C.D. Cal. 2004)
15 ("Full and comprehensive disclosure is critical to the integrity of the bankruptcy process.");
16 *see also id.* at 413-14 (explaining that debtors are expected to fully and truthfully answer
17 all questions and are responsible for their responses).

18 Returning to Nagby's Declaration, after the creditors meeting, he filed amended
19 schedules that included some 15 omitted items. (ECF No. 21 at 22-24.) Nagby then filed
20 two further amendments to his schedules about six weeks later after realizing, in the
21 course of conducting discovery in the Adversary, "that certain limited information in in my
22 amended Schedules and amended SOFA was inaccurate." (*Id.* at 24-25.)

23 At the conclusion of his explanation of all his amendments, Nagby states that he
24 tried in good faith to accurately respond to all the questions and document requests posed
25 by his counsel, and "did not at any time knowingly or intentionally misstate or omit
26 information that was or should have been disclosed on my Schedules or SOFA." (*Id.* at
27 25.) Nagby further explains that, because of his age, health, and prescription medications
28 he takes, he "sometimes [has] difficulty remembering specific details of past

occurrences[.] (*Id.*) He also states that that he has a hard time remembering things that happened in 2015 when he was going through a divorce that he is trying to block from his memory. (*Id.*)

But then Nagby goes on to explain that he omitted things that he later realized he should have included because, "it simply did not occur to me that the LLCs and trusts that were created for my estate plan were relevant to my bankruptcy filing[.]" (*Id.* at 26.) He also states there was no reason for him to conceal any of the trusts or LLCs at issue because Odyssey was aware of them from the case in the Southern District of California. (*Id.*) And he states that he amended his schedules when he became aware of issues and omissions. (*Id.*) Then Nagby, having refreshed his recollection with his counsel, explains what various trusts he set up are and what they were for. (*Id.* at 26-29.)

Next, Nagby turns to income. (*Id.* at 29-20.) Like with the LLCs and trusts, he states, "I did not at any time knowingly or intentionally make any omission or misstatement relating to my income in my Schedules or SOFA." (*Id.* at 29.) And then he goes on to explain the various omissions in income he made, how he realized he had omitted various pieces of income as a result of proceedings in the bankruptcy case, and generally states that he submitted amended schedules in an attempt to rectify these oversights. (*Id.* at 29-30.) He maintains he did not omit any accounts receivable. (*Id.* at 30.)

The Bankruptcy Court relied on Nagby's statements in his Declaration that he chose to omit various items from his schedules because he did not believe they were relevant in reaching its pertinent decisions regarding knowledge and fraudulent intent. (ECF No. 22 at 69-72.) But the Bankruptcy Court's analysis does not give any weight to the other, somewhat contradictory statements in Nagby's Declaration that his omissions were inadvertent or potentially the result of his age, medications, or inability to remember things associated with a divorce, along with his admittedly self-serving statements that he never knowingly or intentionally made any misstatements or omissions. *See supra*. Drawing all reasonable inferences in Nagby's favor—as the Court is required to do—it is possible that his many omissions were inadvertent instead of intentional. Summary

judgment was accordingly inappropriate. *See, e.g.*, *In re Stokes*, 451 B.R. 44, 86 (Bankr. D. Mont. 2011) ("For purposes of summary judgment, based on Stokes' Declaration that he relied on his first attorney and did not make representations or omissions with fraudulent intent, the Court finds, as it did in *Retz*, that Stokes has established the existence of genuine issues of material fact on whether he made the representations and omissions in his Schedules and Statements with the intention and purpose of deceiving the creditors.").

In addition, the main factor the Bankruptcy Court pointed to in granting Odyssey's motion for summary judgment as to Nagby's fraudulent intent is the number of omissions he made. (ECF No. 22 at 71.) But again, drawing all inferences in Nagby's favor, it is possible he inadvertently made the many omissions he admittedly made—because he stated as such in his declaration. *See supra*. In ignoring Nagby's protestations of inadvertence, the Bankruptcy Court effectively made a credibility determination that may not properly be made at the summary judgment stage of litigation. *See In re Plise*, 719 F. App'x at 624-25. And while it is reasonable to conclude that it is more likely that someone has fraudulent intent the more arguably fraudulent acts they engage in, the number of omissions does not necessarily equal intent. And again, "[f]raud claims, in particular, normally are so attended by factual issues (including those related to intent) that summary judgment is seldom possible." *Id.* at 624 (quoting *In re Stephens*, 51 B.R. 591, 594 (9th Cir. BAP 1985)).

Nagby also persuasively points out in reply that many of the cases upon which Odessey relies in its responsive brief involved credibility determinations made after trial, not at summary judgment. (ECF No. 23 at 17-21.) For example, the Ninth Circuit affirmed the bankruptcy court's denial of discharge in *In re Retz*, but that was after a trial. *See* 606 F.3d at 1193. The same goes for *In re Khalil*, 379 B.R. 163, 166 (B.A.P. 9th Cir. 2007), *aff'd*, 578 F.3d 1167 (9th Cir. 2009) and *In re Hansen*, 368 B.R. 868, 872 (B.A.P. 9th Cir. 2007). And while the *In re Sfadia*, Case No. ADV. 03-01404-GM, 2007 WL 7540987, at *13 (B.A.P. 9th Cir. Sept. 5, 2007) court affirmed a grant of summary judgment on

fraudulent intent, there the debtor "did *not* amend the schedules to disclose his interest in FTM, even after he disclosed this fact at the Rule 2004 exam." *Id.* (emphasis in original) Here, Nagby amended his schedules several times. *See supra.* And unlike here, the debtor in *In re Kresock*, Case No. 0:16-BK-08631-BMW, 2021 WL 6097523, at *5 (B.A.P. 9th Cir. Dec. 22, 2021), "did not file a controverting statement of facts or any affidavits to support or provide a foundation for his exhibits." *Id.* But regardless, the general preference that emerges from the caselaw is for the resolution of credibility issues after trial, not at summary judgment. *See In re Wills*, 243 B.R. at 65 ("Summary judgment is ordinarily not appropriate in a § 727 action where there is an issue of intent[.]") (citation omitted).

In sum, the Court is persuaded by Nagby's argument on appeal as to the Bankruptcy Court's grant of summary judgment to Odyssey on the knowingly and fraudulent intent elements of Odyssey's Section § 727(a)(4)(A) claim. The Court therefore vacates that portion of the Bankruptcy Court's order (ECF No. 22 at 69-72) and remands for further proceedings consistent with this order.

## V.   CONCLUSION

The Court notes that the parties made several arguments and cited several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the issues before the Court.

It is therefore ordered that the Bankruptcy Court's Order granting Odyssey's motion for summary judgment is reversed and vacated, in part, as described herein.

This case is remanded to the Bankruptcy Court for further proceedings consistent with this order.

The Clerk of Court is directed enter judgment accordingly and close this case.

DATED THIS 14th Day of March 2024.

_____
MIRANDA M. DU
CHIEF UNITED STATES DISTRICT JUDGE